UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.                                                    Case No. 8:14-CR-521-T-27AEP

EDWARD NEIL FELDMAN
and KIM XUAN FELDMAN
_____/

## ORDER

**BEFORE THE COURT** is Defendant Kim Xuan Feldman's Motion to Dismiss Indictment

(Dkt. 171) and the Government's opposition (Dkt. 177). Upon consideration, Defendant's motion

(Dkt. 171) is DENIED.[1]

**Proceedings resulting in the mistrial**

During trial, Defendant Edward Feldman testified. During cross examination by Kim

Feldman's attorney, Edward Feldman admitted to having been convicted of a single felony, without

further elaboration.[2]

> Q:     Dr. Feldman, have you ever been convicted of a felony?
>
> A:     Yes.
>
> Q:     How many?
>
> A:     One.

(Dkt. 168, p. 9).

---

[1] Defendants are charged with conspiracy to illegally distribute Schedule II and IV narcotic prescription medications outside the scope of professional practice and not for legitimate purpose (Count One), conspiracy to launder proceeds from Feldman Orthopedic and Wellness Center (Count Five) and three substantive charges of money laundering (Counts Six through Eight). Edward Feldman is individually charged with illegally distributing prescription medications that resulted in the death of three individuals (Counts Two through Four). (Dkt. 1). The evidence established that Defendants are married and worked together in Edward Feldman's medical practice, Feldman Orthopedic and Wellness Center (Dkt. 57, p. 4). Edward Feldman is a physician and Kim Feldman worked in an administrative capacity at the clinic.

[2] Feldman's conviction was a 2004 Medicare fraud conviction for taking kickbacks (Dkt. 168, p. 20).

In its first question to Edward Feldman in its cross examination, the Government asked whether his prior felony conviction related to his medical practice, prompting an objection by Edward Feldman:

> Q:           Dr. Feldman, the felony that Mr. Taylor asked you that you were
>              convicted of, that was related to your practice as a doctor, correct?
>
> MR. SISCO:   Objection, Your Honor.

(Dkt. 168, pp. 10-12).

During the bench conference which followed, Edward Feldman moved for a mistrial. The Court indicated that it was inclined to grant a mistrial unless the Government could present authority supporting its position that its cross examination was proper (Id. at 12). Kim Feldman did not object. The jury was discharged for the day and additional argument was presented, during which the Court indicated to Government counsel that "[t]here is no way I can cure the amount of prejudice resulting from the question you posed to Dr. Feldman by curative instruction." (Id. at 15). The Court addressed counsel for *both* defendants:

> THE COURT:    Mr. Sisco, do you have any case law you would like me to
>               consider?
>
> MR. SISCO:    I do not, Judge, I'm unfortunately without connection.
>
> THE COURT:    *Mr. Taylor?*
>
> MR. TAYLOR:   No case law, Your Honor.
>
> THE COURT:    I'm going to step off the bench so I can do some research on
>               this.

(Id. at 16) (emphasis added).

2

After a short recess, the discussion continued on whether a curative instruction would be sufficient to address the prejudice resulting from the Government's cross examination of Edward Feldman.

| | |
|---|---|
| THE COURT: | All right. Mr. Sisco, *Mr. Taylor,* did you find any additional authority for me to consider? |
| MR. SISCO: | No, Judge. However, I have had a chance to have somebody read to me the two cases cited by the government. |
| THE COURT: | They're not applicable. In those cases the defendant clearly opened the door by discussing the nature of his prior convictions and that's not our situation. |
| MR. SISCO: | Judge, and it's my position that a curative instruction is not going to cure the prejudice to my client. |
| MR. TAYLOR: | *Judge, Ms. Feldman has the same position as this is a conspiracy case with regard to that I agree that, I agree that I don't believe a curative instruction is going to –* |
| THE COURT: | Well, I don't know how it prejudices your client, but it would only be admissible as to Dr. Feldman.[3] |

(Id. at 16) (emphasis added).

In both instances, as the record demonstrates, Kim Feldman was provided an opportunity to cite authority on the propriety of a mistrial and the effectiveness of curative instructions. While her counsel offered no authority or comments on the propriety of the mistrial, he clearly indicated his agreement with Defendant Edward Feldman that curative instructions would not be sufficient. Significantly, he never objected or voiced any concern about a mistrial. As the Government argues, his failure to object is tantamount to an implicit consent to Edward Feldman's request for a mistrial.

---

[3] To the extent Kim Feldman suggests that this exchange prevented her from attempting "to interject an argument," that suggestion is unavailing, considering the lengthy discussion between the Court and counsel over two days. And she offers no insight as to what, if any, argument she was contemplating.

*United States v. Puleo*, 817 F.2d 702, 705 (11th Cir. 1987) (where judge expresses clear intent to declare mistrial and defense counsel has opportunity to object but does not, consent to mistrial implied from the totality of circumstances attendant on declaration of mistrial), *cert. denied,* 484 U.S. 978 (1987).

The next morning, additional argument was presented. After a lengthy discussion between the Court and counsel, a mistrial was declared (Dkt. 169, pp. 2-29). Again, Kim Feldman did not object.

## Discussion

Rule 26.3, Fed.R.Crim.P., instructs:

> Before ordering a mistrial, the court must give each defendant and the government an opportunity to comment on the propriety of the order, to state whether that party consents or objects, and to suggest alternatives.

In this Circuit, "a violation of Rule 26.3-the failure to give the parties an opportunity to comment, object, or suggest alternatives before declaring a mistrial-is one factor to be considered in determining whether a trial judge exercised sound discretion" and the failure to comply "strongly suggests that the trial judge did not exercise sound discretion." *United States v. Berroa*, 374 F.3d 1053, 1058-59 (11th Cir. 2004), *cert. denied*, 543 U.S. 1076 (2005).

Kim Feldman is correct that she was not expressly asked whether she consented or objected to the mistrial. Notwithstanding, the record demonstrates that she was provided several opportunities to comment on, object to, or suggest alternatives to a mistrial. As the Committee Notes to Rule 26.3 contemplate, the parties were provided "an opportunity to place on the record their views about the proposed mistrial order." The extensive discussion between the Court and counsel demonstrate that her views on the necessity of a mistrial and the feasibility of curative instructions were solicited.

4

In sum, during the course of three sessions, two on the afternoon of November 17, 2015 and again the next morning, the Court considered the parties' arguments on the propriety of a mistrial, engaged the attorneys in discussion, considered the alternatives and chose what it determined was least harmful to the rights of the Defendants. Its decision was made in a deliberate, rather than abrupt or precipitous, manner.[4] *See Berroa*, 374 F.3d at 1059 (no abuse of discretion, notwithstanding failure to comply with Rule 26.3, where circumstances as a whole reveal that decision to declare mistrial was not abrupt or precipitous response but a deliberate decision).

## Manifest necessity and the Fifth Amendment

As the Supreme Court has observed, "[s]ince 1824 it has been settled law in this Court that 'The double-jeopardy provision of the Fifth Amendment does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.'" *Gori v. United States*, 81 S.Ct. 1523, 1526, 367 U.S. 364, 367-68 (1961). Where, "for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." *Id.* A mistrial is appropriate when, "taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." *United States v. Therve*, 764 F.3d 1293, 1298 (11th Cir. 2014) (quoting *United States v. Perez*, 22 U.S. 579, 6 L.Ed. 165 (1824)).

---

[4] As the Court shared: I don't think I have ever anguished over an evidentiary matter in a criminal trial in the 26 years I've been a judge as much as I have in this one and that tells me that there is prejudicial error in this case that a curative instruction will not cure. (Dkt. 169, p. 18-19).

An express finding of manifest necessity is not required if the record provides sufficient justification for the mistrial. *Arizona v. Washington*, 98 S.Ct. 824, 836, 434 U.S. 497, 516-17 (1978); *United States v. Hoa Quoc Ta*, 221 Fed. App'x 938, 944 (11th Cir. 2007) ("While it is favored that the trial court make manifest necessity determinations explicit in the record, the trial court is not required to make such statements."); *United States v. Scott*, 613 Fed. App'x 873, 874 (11th Cir. 2015) (entire record of case reviewed as to whether there was manifest necessity for a mistrial, without limiting the review to the actual findings of the trial court); *United States v. Therve*, 764 F.3d at 1298 ("We review a mistrial order to determine whether it was manifestly necessary under all of the circumstances . . . without limiting ourselves to the actual findings of the trial court").

In any event, a finding of manifest necessity is implicit in the deliberative remarks of the Court, and the record supports the declaration of a mistrial. Edward Feldman's prior conviction was more than ten years old and therefore generally inadmissible for impeachment purposes. *See* Rule 609(b), Fed. R. Evid. Indeed, because of the limitations on use of a conviction more than ten years old, the Government understandably had not provided written notice of its intent to introduce it. *See* Rule 609(b)(2); (Dkt. 169, p. 3-4). However, when Kim Feldman brought out Edward Feldman's prior felony conviction, the Government took the position, albeit mistakenly, that Kim Feldman's cross examination opened the door for it to inquire into the nature of the conviction. But rather than simply ask Edward what he had been convicted of, the question it asked injected an unduly prejudicial aspect of the prior conviction into the case, as Edward Feldman convincingly argued:

> MR. SISCO:     And what this jury has been left with is the question that suggests that
> Dr. Feldman's prior conviction has to do with the practice of medicine
> and where our defense rests in large part on Dr. Feldman's good faith

in his exercise of clinical judgment, the impact of leaving the jury with that since yesterday afternoon without explanation is so overwhelmingly prejudicial to Dr. Feldman that it cannot be overcome and it cannot be cured by a curative instruction.

. . .

And the question as posed by Ms. Hale was not as to the nature of the offense, it was to try to suggest something more akin to seeking character evidence than impeachment evidence, the question being isn't it true that your prior conviction was related to the practice of medicine -- I don't have the exact quote in front of me -- your practice as a doctor.

. . .

The prejudice that arises from it is immense. And why is it immense? It's immense because Ms. Hale might as well said to this jury isn't it true you were convicted of the same conduct in this previous offense?

. . .

Well, what has been suggested by the question that was asked is that the offense for which he was convicted has to do with his practice of medicine and by inference the decision-making process and would directly affect and prejudice our argument with regard to good faith.

. . .

In this case the defendant's testimony was an essential part of the defense case because we are relying on the good faith instruction that we anticipate will be given or arguing good faith and it's foundational for the testimony of our expert witness. And for those reasons the risk of unfair prejudice substantially outweighs any limited probative value, using the analysis under *Pritchard*.[5]

. . .

That same court, in citing to *Pritchard*, recognized that even with a limiting instruction, the jury is still likely to make an impermissible inference related to propensity as opposed to using it for impeachment, and that's the concern here.

(Dkt. 169, p. 10 - 11; 13).

---

[5] *United States v. Pritchard*, 973 F.3d 905 (11th Cir. 1992).

7

Considering these arguments, the Court identified the prejudice resulting from the question posed by the Government to Edward Feldman:

> THE COURT:   I said earlier that there was no similarity between the charged offenses in this case and the prior conviction. And I will modify that to this extent: While the conduct is dissimilar, the fact that the question posed to the jury suggested that it arose from Dr. Feldman's medical practice or was related to his practice suggests a similarity to the jury that can only be cured by actually delving into the nature of the conviction, which I don't see any authority under our circumstances as authorizing.

. . .

> I see no way of curing the evidentiary issue in this case.

(Dkt. 169, p. 27, 28).

In its final comments before declaring a mistrial, the Court considered whether a "strong cautionary instruction" would cure the prejudice resulting from the Government's cross examination, but determined that it would not, since the matter went "to the heart of the defense that was just beginning to take root." (Dkt. 169, p. 28-29). A mistrial was, "with considerable reluctance," therefore declared, because "there is no way to cure what has occurred." (Id. at 29). Manifest necessity is implicit in the court's reasoning. Dismissal of the Indictment is therefore inappropriate.

**DONE AND ORDERED** this _5th_ day of January, 2016.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

8